AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

FILED

JAN 31 2022

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

for the

Northern District of Oklahoma

In the Matter of the Search of
***203 Quapaw Street, Quapaw, Ottawa County, Oklahoma 74363 and curtilage premises; along with a pull-behind mobile home; a 2010 Volvo S40 displaying Oklahoma license plate LSL889, a 2014 Nissan Murano displaying Oklahoma License Plate IYZ476, and a Yellow Dodge pickup truck displaying Oklahoma License Plate ATV550, all located on the property***

Case No. 22-mj-64-SH

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment "A"

located in the Northern District of Oklahoma, there is now concealed *(identify the person or describe the property to be seized):*

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| **21 U.S.C. § 841(a)(1)** | **Possession of Methamphetamine with Intent to Distribute** |
| **21 U.S.C. § 846** | **Drug Conspiracy** |

The application is based on these facts:

**See Affidavit of TFO Billy Stites, DEA, attached hereto.**

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: __________ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

TFO Billy Stites, DEA
*Printed name and title*

Sworn to before me via telephone.

Date: 1/31/22

*Judge's signature*

City and state: Tulsa, OK

Susan E. Huntsman, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE**

I, Billy J. Stites, your Affiant and the undersigned, being duly sworn, depose and say:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant authorizing the search of 203 Quapaw Street, Quapaw, Ottawa County, Oklahoma 74363 (Google Global Positioning System Coordinates (36.955989, -94.790555), and curtilage premises, all located within the Northern District of Oklahoma, more particularly described in Attachment A, annexed hereto, and fully incorporated herein. The items to be seized pursuant to this warrant are described in Attachment B, annexed hereto, and fully incorporated herein.

2. I am a Special Agent with the Bureau of Indian Affairs ("BIA"), Division of Drug Enforcement and have been employed as such since November 2008. I am currently assigned to the United States Drug Enforcement Administration ("DEA"), Tulsa, Oklahoma Resident Office, as a Task Force Agent. I have been assigned to the Drug Enforcement Administration since April 2009.

3. I have been in law enforcement since 2003. I have completed the State of Oklahoma Council on Law Enforcement Education and Training reserve officer and basic police academy (CLEET). I have completed the Federal Criminal Investigator Training Program at the Federal Law Enforcement Training Center (FLETC) located in Glynco, GA. During my employment in law enforcement, I have attended training in the areas of drug enforcement to include Clandestine Lab Investigators Certification, Drug Identification, Criminal Interdiction, NARK II Drug test kit certification, Search and

Seizure, Standardized Field Sobriety Testing, Covert Electronic Surveillance, Physical Surveillance, Electronic Surveillance, Diversion Investigations, Financial Investigations, Interstate Trafficking, Air and Ground Interdiction, Money Laundering Investigations and Title III wire investigations both consensual and judicial.  I have attended the United States Department of Interior Bureau of Indian Affairs Drug Investigators School, The United States Drug Enforcement Administration Drug Investigators School and The United States Drug Enforcement Administration Advanced Drug Investigators School.  I attend at minimum forty hours annually of continuing education in drug enforcement related topics.

4. During my employment in law enforcement, I have been involved in controlled substance investigations to include the manufacturing, trafficking, distribution, cultivation, possession of controlled substances and money laundering involving the proceeds from the distribution of controlled substances.  I have taken part in operations involving the surveillance, detection, identification, and seizure of controlled substances, utilizing confidential sources and undercover agents acting in an undercover capacity to purchase controlled substances.  Your Affiant has obtained and served search warrants relating to controlled substance violations.

5. I make this Affidavit in support of a search warrant to search and seize evidence related to violations of Title 21, United States Code, Section 841, possession of methamphetamine, a controlled substance, with intent to distribute; and Title 21, United States Code, Section 846, conspiracy to possess methamphetamine, a controlled substance, with intent to distribute.

6. The information set forth in this Affidavit is known to me as a result of my own investigation, my review of law enforcement reports, and my communication with other law enforcement personnel.

7. This affidavit contains information necessary to establish probable cause but does not include each fact known by me or known by the government.

8. Based upon your Affiant's training, experience and knowledge in this and other drug trafficking investigations, your Affiant has reason to believe that:

a. Drug traffickers keep books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers relating to the transportation, ordering, possession, sale, and distribution of drugs. The books, records, receipts, notes, ledgers, etc., are usually kept in the suspect's residence and/or vehicles.

b. Drug traffickers secrete contraband, proceeds of drug sales and records of drug transactions in secure locations within their residences and/or their businesses and automobiles for ready access and to conceal them from law enforcement.

c. Drug traffickers commonly keep addresses or telephone numbers in books, on papers, or in cellular telephones, which reflect names, addresses, and/or telephone numbers of their associates in the drug trafficking organization.

d. Drug traffickers usually keep paraphernalia for cultivating, manufacturing, packaging, diluting, weighing, and distributing their drugs. That paraphernalia includes but is not limited to scales, plastic bags, diluting agents, and weapons for protection of their criminal enterprises.

e. Drug traffickers try to legitimize their profits from the sale of drugs and often place assets in names other than their own to avoid detection of these assets by the government and law enforcement agencies.

     f.     Drug traffickers often place assets in names of business/corporate entities as nominee title holders to avoid detection of these assets by government and law enforcement agencies.  Even though these assets are placed in the names of other persons or entities, the drug traffickers own and continue to use these assets and exercise dominion and control over them.

     g.     Drug traffickers must keep and have quick access to large amounts of United States currency or their liquid assets in order to maintain and finance their ongoing drug trafficking business.

     h.     Drug traffickers keep, in their residence and/or business establishments, electronically stored data, computerized or written books, records, receipts, diaries, notes, ledgers, airline tickets, cashier's checks, money orders and other papers relating to the transportation, ordering, sale, and distribution of controlled substances and the outstanding debts and collections from controlled substances that have been distributed.

     i.     Drug traffickers commonly supply controlled substances on consignment, also known as "fronting," to their customers, who subsequently pay for the drugs after reselling said drugs.  Therefore, the above-mentioned books, records, receipts, notes, ledgers, etc., will be secured by the drug traffickers within their residence and/or their businesses for their ready access to them for the purpose of figuring out drug debts and collecting monies derived from the sale of drugs.

     j.     Drug traffickers commonly conceal contraband, proceeds of drug transactions, records of these transactions, and records reflecting names, nicknames, addresses and telephone numbers of drug associates within their residence and/or place of business, their business vehicles, or the curtilage of their residence or business for ready access and to hide them from law enforcement agencies.

k.      Drug traffickers commonly keep records reflecting names, nicknames, address and telephone numbers of both their current and past drug trafficking associates.

l.      Drug traffickers who are aware of an ongoing criminal investigation will often destroy an existing format of records reflecting their drug transactions (i.e., names of associates who owe them money for drugs and amounts of monies owed and collected).

m.      Drug traffickers who are aware of an ongoing criminal investigation into their drug activities will usually alter their operational methods of drug manufacturing, importation, and distribution to hinder law enforcement agencies from detecting their unlawful activities.

n.      Drug traffickers will commonly conceal within their vehicles, residence or businesses, or within the curtilage of their residence or businesses, caches of drugs, large amounts of currency, firearms, financial instruments, precious metals, precious gemstones, jewelry, electronic equipment, and other items of value and/or proceeds of drug transactions and evidence of financial transactions relating to obtaining, transferring, secreting, or spending large sums of money made in drug trafficking activities;

o.      Drug traffickers will try to legitimize the profits from illegal drug transactions by using domestic banks and their attendant services (i.e., safe deposit boxes, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate, shell corporations and businesses fronts).

p.      Drug traffickers who are aware of a criminal investigation into their drug activities will conceal, liquidate and transfer easily movable drug-derived assets in order to prevent law enforcement agencies from seizing and forfeiting these assets.

q.      Drug traffickers often have photographs or video movies of themselves, their co-conspirators and the property and assets bought with drug proceeds. These photographs and video movies are normally in the drug traffickers' possession, their residence and/or their place of business.

r.      Drug traffickers commonly have firearms in their possession (on their person, at their residence, in their vehicles and/or their business) including but not limited to handguns, rifles, shotguns, and automatic weapons. These firearms are most often used and/or kept in order to protect and secure a drug trafficker's property.

s.      Drug traffickers commonly secrete in their vehicle's items used in the manufacture and distribution of controlled substances.

t.      Drug traffickers will accumulate and keep a large amount of drug proceeds, specifically currency, over a period of years, so that the proceeds can be used in later years for personal asset acquisitions and/or expenditures during periods when a drug trafficker is not distributing drugs.

u.      Drug traffickers will receive incoming telephone calls and text messages to arrange any type of drug transactions with co-conspirators or associates. Drug traffickers will also store and keep sent and received text messages involving drug transactions within cellular telephones. Additionally, drug traffickers often have and use more than one cellular/smart telephone and commonly keep and store their cellular/smart telephones on their persons, in their residences, and/or in their vehicles.

**FACTS AND CIRCUMSTANCES ESTABLISHING PROBABLE CAUSE**

9.      In summary, the evidence shows that Javier ZAVALA-GARCIA regularly distributes methamphetamine from 203 Quapaw Street, Quapaw, Ottawa County, Oklahoma within the Northern District of Oklahoma.

10. On May 14, 2020, your Affiant and other agents assisted with a controlled delivery and search warrant at 2037 A Street Northeast in Miami, Oklahoma, resulting in the seizure of methamphetamine and the arrest of Florencia ALVAREZ-PEREZ.

11. In summary, a FedEx package containing a taped bundle of approximately 1400 grams of suspected methamphetamine was discovered by FedEx management in Missouri. The package was being sent to 2037 A Street Northeast, Miami, Oklahoma from 13111 Gramercy Place, Gardena, California. The package was transported by the Missouri Highway Patrol to the Miami Police Department where the package was turned over to DEA Task Force Officer Mark Byfield. TFO Byfield obtained an anticipatory search warrant for the residence located at 2037 A Street Northeast.

12. TFO Byfield delivered the package to 2037 A Street Northeast. The package was taken into the residence by a female who was arrested after the execution of the search warrant.

13. Several months after her arrest, the above female became a cooperating defendant (CD) and was interviewed by TFO Byfield in the presence of her attorney. The CD indicated that the package seized on May 14, 2020, was destined for Javier ZAVALA-GARCIA who resided in Quapaw, Oklahoma. The CD indicated that ZAVALA-GARCIA had been working at J&M Farms in Miami, OK.

14. TFO Byfield learned from a manager at J&M Farms that Javier ZAVALA- GARCIA had worked there but quit sometime after the May 14, 2020 incident.

15. On January 24, 2022, Ozark Drug Enforcement Agent Landon Carter met with an Ozark Drug Enforcement Team and Bureau of Indian Affairs Confidential Source hereinafter referred to as CS. The CS made a phone call to Carlos Antonio OSORIO

a/k/a "RICO," who is acting as a middleman for ZAVALA-GARCIA. The call was consensually monitored and recorded by Agent Carter. The CS placed an order with OSORIO for a "half" meaning half a pound of methamphetamine. The CS and OSORIO arranged to make the purchase on the following day.

16. On January 25, 2022, your Affiant and TFO Byfield met with the CS. The CS said he/she has bought methamphetamine from ZAVALA- GARCIA at his residence located at 203 Quapaw Street, Quapaw, Ottawa County, Oklahoma on at least four previous occasions. The CS had indicated he/she would call OSORIO a/k/a "RICO" when almost to the residence. OSORIO would then notify ZAVALA-GARCIA who would exit his residence and meet the CS in the driveway. The CS advised he/she never goes into the residence and never contacts ZAVALA-GARCIA directly. The CS indicated that he/she doesn't even know ZAVALA-GARCIA's name just that he is the source and was able to identify ZAVALA-GARCIA from his Oklahoma driver's license photograph.

17. Your Affiant outfitted the CS with an audio/video recording device and a transmitter to document the meeting with ZAVALA-GARCIA. The CS drove to 203 Quapaw Street, Quapaw, Oklahoma and met with ZAVALA-GARCIA in the driveway in front of 203 Quapaw Street. The CS provided ZAVALA-GARCIA with pre-recorded currency provided by your Affiant for buying the methamphetamine and ZAVALA-GARCIA distributed three (3) clear sandwich bags of suspected methamphetamine to the CS. The CS left and met with your Affiant turning over the suspected methamphetamine. The CS advised ZAVALA-GARCIA exited a yellow Dodge pickup truck sitting next to the residence and distributed the methamphetamine to the CS. The CS advised after the transaction ZAVALA-GARCIA got into small car identified by your Affiant as a 2010

Volvo S40 displaying Oklahoma license plate LSL889.  Your Affiant identified the

yellow Dodge truck as displaying Oklahoma license plate ATV550.  Your Affiant later

conducted a presumptive field test of the suspected methamphetamine distributed by

ZAVALA-GARCIA and received a positive sign for methamphetamine.

Methamphetamine is a Schedule II controlled substance.

18.     The CS has worked intermittently with law enforcement since 2015.  The

CS has a criminal history of controlled substance violations, assault, theft, stolen

property, motor vehicle violations, trespass, and traffic offenses.  The CS has provided

information that has been independently corroborated when possible.  The CS has

assisted with investigations, has provided information that led to a seizure of

methamphetamine and the arrest of suspects.  The CS has not provided information that

has been deemed false or misleading.  Currently, the CS is working for judicial

consideration.

19.     Your Affiant checked with the City of Quapaw, Oklahoma utilities and

learned that Javier ZAVALA-GARCIA is listed on the utilities for 203 Quapaw Street,

Quapaw, Oklahoma.  ZAVALA-GARCIA has had utilities at the residence since February

of 2020.

20.     While conducting surveillance on 203 Quapaw Street, your Affiant has

observed other vehicles parked at the location such as a 2014 Nissan Murano sport utility

vehicle displaying Oklahoma license plate IYZ476.  Your Affiant has also observed the

yellow Dodge pickup truck displaying Oklahoma license plate ATV550 parked next to

the residence.

21.     Your Affiant checked the vehicle registration status of the 2010 Volvo

with license plate LSL889, the 2014 Nissan Murano with license plate IYZ476, and the

2000 Dodge truck with license plate ATV550 through the Oklahoma Department of Motor Vehicles. The 2010 Volvo is registered to Javier GARCIA at 203 Quapaw Street, Quapaw, Oklahoma. The 2014 Nissan Murano is registered to Javier ZAVALA-GARCIA at 303 W 2nd Street, Quapaw, Oklahoma. The 2000 Dodge truck is registered to Bernardo JUAREZ at 203 Quapaw Street, Quapaw, Oklahoma.

22. On January 27, 2022, your Affiant has conducted surveillance on 203 Quapaw Street, Quapaw, Oklahoma and has observed ZAVALA-GARCIA entering and exiting the 2010 Volvo and the 2000 Dodge truck (mentioned above), as well as an unidentified white sport utility vehicle displaying license plate LVL2411. The make and model of the white sport utility vehicle is unknown along with the issuing State of the license plate.

23. Based on the above, your Affiant believes that Javier ZAVALA-GARCIA is using the residence at 203 Quapaw Street, Quapaw, Ottawa County, Oklahoma as a base of operations and methamphetamine stash house, and that he is using the 2010 Volvo S40 displaying Oklahoma license plate LSL889 and the yellow Dodge pickup truck displaying Oklahoma license plate ATV550 distribute methamphetamine or transport the currency obtained from the sale of methamphetamine within the Northern District of Oklahoma.

## CONCLUSION

Based on the foregoing observations and information that probable cause exists to search 203 Quapaw Street, Quapaw, Ottawa County, Oklahoma (Google Global Positioning System Coordinates 36.955989, -94.790555), including its contents, vehicles, containers, outbuildings thereof, all as described in Attachment A, and to seize evidence of controlled substance violations located therein. Your Affiant respectfully requests the

court issue a warrant authorizing the search of the aforementioned premises and property, as described in Attachment A, related to violations of Title 21, United States Code, Section 841, possession of methamphetamine, a controlled substance, with intent to distribute; and Title 21, United States Code, Section 846, conspiracy to possess methamphetamine, a controlled substance, with intent to distribute, allowing your Affiant or any federal law enforcement officer, tribal police, sheriff, deputy sheriff, police officer or law enforcement officer with proper assistance to search the aforementioned premises and property, as described in Attachment A, and seize evidence.

I hereby certify that the above is true and correct to the best of my knowledge.

Respectfully submitted,

Billy J. Stites
BIA Special Agent
DEA Task Force Agent

Subscribed and sworn to before me by telephone on January 31, 2022

SUSAN E. HUNTSMAN
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF OKLAHOMA

**ATTACHMENT A**

203 Quapaw Street, Quapaw, Ottawa County, Oklahoma 74363 and curtilage premises (Pictured Below), (Google Global Positioning System Coordinates 36.955989, -94.790555); along with a pull-behind mobile home parked behind the residence to the west;

Vehicles located on the property to include:

2010 Volvo S40 displaying Oklahoma license plate LSL889;

2014 Nissan Murano displaying Oklahoma license plate IYZ476;

Yellow Dodge pickup truck displaying Oklahoma license plate ATV550; all located on the property.

Directions from the United States Postal Service located at 601 South Main Street, Quapaw, Oklahoma:

Head north on S Main St/U.S. Rte 66 toward W 6th St for 0.3 miles

Turn left onto W 3rd St for 0.1 miles

The residence will be straight ahead.







2 min (0.5 mile)
via S Main St/U.S. Rte 66 and W 3rd St

**United States Postal Service**
601 S Main St, Quapaw, OK 74363

↑ Head north on S Main St/U.S. Rte 66 toward W 6th St

0.3 mi

↰ Turn left onto W 3rd St

0.1 mi

**205 S Quapaw St**
Quapaw, OK 74363

These directions are for planning purposes only. You may find that construction projects, traffic, weather, or other events may cause conditions to differ from the map results, and you should plan your route accordingly. You must obey all signs or notices regarding your route.

**ATTACHMENT B**

**Property to be seized:**

1. Any controlled dangerous substances to wit; methamphetamine and other controlled substances, paraphernalia commonly used in the consumption, distribution, and manufacture of controlled substances, including but not limited to, scales, other weighing or measuring devices, sifters, containers, bottles, tubing, plastic bags, packing material, formulas, drug processing equipment, smoking devices.

2. Books, records, receipts, notes, ledgers, and other papers relating to the transportation, ordering, purchase, and distribution of controlled substances methamphetamine and other controlled substances.

3. Papers, tickets, notes, receipts, and other items relating to domestic and international travel.

4. Books, records, invoices, receipts, records of real estate transactions, bank statements and related records, passbooks, money drafts, letter of credit, money orders, bank drafts, and cashier's checks, safe deposit box keys, money wrappers, and other items showing the obtaining, secreting, transfer, and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or expenditure of money.

5. Electronic equipment such as cellular/smart telephones, which are expected to have dialed or received numbers, contact lists, text messages, personal digital assistants, computers, hard drives, portable hard drives, telex machines, facsimile machines, currency counting machines, telephone answering machines, and related manuals used to generate, transfer, count, record, and/or store the information described in items 1, 2, 3, and 4, of this exhibit. Additionally, computer software, tapes and discs,

audiotapes, and the contents therein, containing the information generated by the aforementioned electronic equipment.

a. Physical media, such as cellular telephones, electronic devices (including computers), and other data storage devices will not be searched until a separate warrant is obtained;

6. Proceeds of drug trafficking including, United States and foreign currency, precious metals, jewelry, vehicles and financial instruments, including stocks and bonds.

7. Photographs, including still photos, negatives, video tapes, films, undeveloped film and the contents therein, slides, in particular photographs of co-conspirators, of assets and/or controlled substances.

8. Books and records documenting drug related debts, transactions and persons associated thereto, including but not limited to address, books, telephone books, ledgers, rolodex indices and any papers reflecting names, addresses, telephone numbers of co-conspirators, sources of supply, customers, financial institutions, and other individuals or businesses with whom a financial relationship exists.

9. Indicia tending to show the identity of the person or persons occupancy, residency, rental and/or ownership of the premises described herein, or vehicles, including but not limited to utility company receipts, telephone bills, canceled mail envelopes, rental, purchase or lease agreements, vehicle registration, and keys.

10. Firearms and ammunition, including but not limited to handguns, pistols, revolvers, rifles, shotguns, machine-guns, other illegal weapons and any records or receipts pertaining to firearms and ammunition.

11.     Any other tangible medium, together with the means and instruments, and all other property, constituting evidence of violations of the law concerning the trafficking of controlled substances.